## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MELVIN APONTE,

　　　　　　　　*Plaintiff,*

　　v.

CITY OF PHILADELPHIA, et al.,

　　　　　　　　*Defendants.*

CIVIL ACTION
NO. 20-3373

**PAPPERT, J.**　　　　　　　　　　　　　　　　　　　　　**March 3, 2021**

### <u>MEMORANDUM</u>

Represented by counsel, Melvin Aponte sued the City of Philadelphia and numerous John Does, each purportedly Philadelphia police officers, alleging civil rights and common law violations after police injured and arrested him.  The City moves to dismiss all claims against it.  The Court grants the Motion.

I

A

On July 14, 2018, Aponte went to his cousin's home in Philadelphia to see his grandmother.  (Compl. ¶ 12, ECF 1.)  He knocked on the front door and neighbors called the police.  (*Id*. at ¶ 13.)  Shortly thereafter, six to eight police officers arrived and assaulted him.  (*Id*.)  Aponte was tased at least twice, hit with a baton on his left hand and "had prongs in [his] head, arm and chest.")  (*Id*. at ¶¶ 13–14, 19.)  He was taken to the hospital for his injuries.  (*Id*. at ¶¶ 15, 18.)

Aponte was placed under arrest before going to the hospital, and when he left the hospital he was taken to a police station and handcuffed to a cell.  (*Id*. at ¶ 15.)  He was held at SCI Frackville for six months until the charges against him were

eventually dismissed.  (*Id.* at ¶ 16.)  The Complaint provides no detail regarding the nature of Aponte's arrest, detention or discharge from prison.  *See generally* (*id.*).

B

Aponte filed his Complaint on July 10, 2020 asserting claims under 42 U.S.C. § 1983 against the unnamed officers for excessive use of force (Count I) and the City for maintaining policies and/or customs that caused the violation of his civil rights (Count IV) as well as for *respondeat superior* liability for the officers' actions (Count V).  *See* (*id.* at ¶¶ 32–38, 52–67).  The Complaint also alleges conspiracy (Count II)[1] and bystander liability (Count III) against the police.  *See* (*id.* at ¶¶ 39–51).  Aponte says he asserts assault and battery claims against the Doe Defendants, *see* (Resp. to Mot. to Dismiss 2, ECF 5), but where and how he makes these claims under any Count is not apparent from his pleading.

The City argues Aponte has not adequately alleged his rights were violated as a result of a City custom or policy or that a municipal policymaker ratified such a custom or policy.  (Mot. to Dismiss 2–5, ECF 3.)  It further contends Section 1983 does not provide for *respondeat superior* liability.  (*Id.* at 2.)

---

[1]     Aponte's allegations under Count II, which he vaguely labels "Supplemental Claims Against Individual Defendants Police Officers John Does I-VIII," are ambiguous and confusing.  They ostensibly attempt to allege conspiracy, but do so only by making conclusory assertions that the officers conspired.  *See*  (Compl. ¶¶ 40–41).  He then says the officers either invaded his privacy or cast him in a false light "by making it appear to others that Mr. Aponte had violated or Aponte's violating the laws of the Commonwealth," though no further explanation supports these statements.  *See* (*id.* at ¶ 42).  The Court has limited its description of Count II to a conspiracy claim because in his Response to the Motion to Dismiss Aponte asserts "[t]his is an excessive force, assault and battery, bystander liability and conspiracy civil rights action."  *See* (Resp. to Mot. to Dismiss 2, ECF 5).  He makes no mention of privacy claims, and Count II does not allege assault and battery.

2

II

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain "a short and plain statement that the pleader is entitled to relief."  This Rule is intended to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests'" and does not require "detailed factual allegations." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). But it "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.*  A plaintiff must make a " 'showing,' rather than a blanket assertion, of entitlement to relief" that rises 'above the speculative level.'" *McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009) (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231–32 (3d Cir. 2008)).

To survive dismissal under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when the facts pled "allow[] the court to draw the reasonable inference that [a] defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

When a complaint includes well-pleaded factual allegations, a court "should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016)

3

(quoting *Iqbal*, 556 U.S. at 679).  However, this "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the United States*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted).  "Conclusory assertions of fact and legal conclusions are not entitled to the same presumption." *Id.*  This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (quoting *Connelly*, 809 F.3d at 786–87).

## III

### A

As an initial matter, the City is correct that "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *see also City of Canton v. Harris*, 489 U.S. 378, 385 (1989) ("[A] municipality can be found liable under § 1983 only where the municipality *itself* causes the constitutional violation at issue.") (emphasis in original); *Porter v. City of Phila.*, 975 F.3d 374, 383 (3d Cir. 2020) ("Pursuant to the Supreme Court's holding in *Monell*, a city is only liable under § 1983 for constitutional violations that are caused by its official policies and customs.").  Aponte nonetheless seeks to hold the City "liable under the doctrine of *respondeat superior* for the intentional, malicious and indifferent conduct of its employees" in Count V.  *See* (Compl. ¶ 67).  He cannot do so, and Count V is dismissed with prejudice.

### B

To state a § 1983 claim for municipal liability, a plaintiff must allege that the defendant's policies or customs caused an alleged constitutional violation.  *See Monell*,

436 U.S. at 694.  To "satisfy the pleading standard," a plaintiff must "identify a custom

or policy, . . . specify what exactly that custom or policy was," *McTernan*, 564 F.3d at

658, and "demonstrat[e] an 'affirmative link' between the policy or custom and the

particular constitutional violation he alleges."  *Estate of Roman v. City of Newark*, 914

F.3d 789, 798 (3d Cir. 2019).  The Third Circuit Court of Appeals has explained:

> A government policy or custom can be established in two ways.  Policy is made
> when a 'decisionmaker possess[ing] final authority to establish a municipal
> policy with respect to the action' issues an official proclamation, policy, or edict.
> A course of conduct is considered to be a 'custom' when, though not authorized by
> law, 'such practices of state officials [are] so permanently and well-settled' as to
> virtually constitute law.

*McTernan*, 564 F.3d at 658 (quoting *Andrews v. City of Phila.*, 895 F.2d 1469, 1480 (3d

Cir. 1990)).  "Custom requires proof of knowledge and acquiescence by the

decisionmaker."  *Id.* (citing *Watson v. Abington Twp.*, 478 F.3d 144, 154 (3d Cir. 2007);

*Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996)).

Alternatively, a plaintiff may state a claim for municipal liability under § 1983

by alleging failure to train, supervise or discipline employees.  *See Estate of Roman v.*

*City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019); *see also Reitz v. Cty. of Bucks*, 125

F.3d 139, 145 (3d Cir. 1997) ("[I]n the absence of an unconstitutional policy, a

municipality's failure to properly train its employees and officers can create an

actionable violation of a party's constitutional rights under § 1983.").  "For claims

involving police officers, the Supreme Court has held that the failure to train 'serve[s]

as [a] basis for § 1983 liability only where [it] . . . amounts to deliberate indifference to

the rights of persons with whom the police come into contact.'"  *Estate of Roman*, 914

F.3d at 798 (quoting *City of Canton*, 489 U.S. at 388).  To sufficiently plead deliberate

indifference, a plaintiff must establish that "(1) municipal policymakers know that

employees will confront a particular situation[,] (2) the situation involves a difficult choice or a history of employees mishandling[,] and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Id.* (quoting *Doe v. Luzerne Cty.*, 660 F.3d 169, 180 (3d Cir. 2011)). "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train," *Connick v. Thompson*, 563 U.S. 51, 62 (2011), but in rare cases deliberate indifference can be shown if "in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *City of Canton*, 489 U.S. at 390.

i

In Count IV, Aponte alleges the City of Philadelphia "developed and maintained policies and/or customs exhibiting deliberate indifference to the constitutional rights of persons, which caused the violation of [his] rights," including:

> [C]over[ing]-up and . . . avoid[ing] detection of acts of police abuse or use of excessive force by charging victims of police abuse with criminal offenses thereby attempting to prevent the victim's access to the courts and to due process . . . .

> [I]nadequately supervis[ing] and train[ing] their police officers, including the defendant officers, thereby failing to adequately discourage further constitutional violations on the part of their police officers . . . .

> [N]ot requir[ing] appropriate in-service training or re-training of officers who were known to have engaged in police misconduct . . . .

> [I]nadequately supervis[ing] and train[ing] police officers, including the defendant officers, against a code of silence or 'blue code' of officers refusing to intervene against or provide truthful information against constitutional violations and misconduct committed by their fellow officers. . . .

> [U]sing an ASP/Baton subjecting individuals to the same type of treatment to which Mr. Aponte was subjected . . . .

(Compl. ¶¶ 53–58.)  He further alleges the City "knew or should have known" about these "polic[ies], custom[s] and practice[s]" and "deliberately, knowingly, and negligently failed to take measures to stop or limit" them by "providing proper training, supervision, and control of the officers, agents, and/or employees of the City of Philadelphia."  (*Id.* at ¶ 59.)  As a result, City police officers "believed that their actions would not be properly monitored by supervisory officers and that misconduct would not be investigated or sanctioned[] but would be tolerated and condoned."  (*Id.* at ¶ 60.)

The City correctly argues Count IV should be dismissed "because Plaintiff simply parrots the legal standard for municipal liability under § 1983 without pleading sufficient supporting facts" to state a claim against the City.  (Mot. to Dismiss 3–4.)  Beyond summarizing his experience with the Doe Defendants on July 14, 2018, Aponte fails to allege any facts to support his claims about City policies, customs and practices.  *See McCall v. City of Phila.*, 396 F. Supp. 3d 549, 559 (E.D. Pa. 2019) ("Other than pleading facts that are specific to Plaintiffs, the inclusion of the conclusory terms 'pattern, practice and custom' are simply threadbare recitations of the elements of their claims.").  Rather, he asserts naked "legal conclusion[s] styled as . . . factual allegation[s]," *Kingsmill v. Szewczak*, 117 F. Supp. 3d 657, 672 (E.D. Pa. 2015), which are not entitled to a presumption of truth.  *See More v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).  "[A] § 1983 complaint must do more than recite the necessary elements of policy, practice or custom, causation, and deliberate indifference."  *Cooper v. City of Chester*, 810 F. Supp. 618, 623 (E.D. Pa. 1992); *cf. McCall v. City of Phila.*, 396 F. Supp. 3d 549, 559 (E.D. Pa. 2019) ("Conclusory and

general claims that paraphrase § 1983 will not satisfy federal pleading requirements since they fail[] to satisfy the rigorous standards of culpability required to state a claim for municipal liability.").  To the extent Aponte intended for his own experience to serve as proof of his broad policy, custom and failure to train allegations, "a 'policy cannot ordinarily be inferred from a single instance of illegality,'" *Moore v. Solanco Sch. Dist.*, 471 F. Supp. 3d 640, 668 (E.D. Pa. 2020) (quoting *Losch v. Parkesburg*,736 F.2d 903, 911 (3d Cir. 1984)), and the Court cannot infer one here given Aponte's vague and conclusory allegations.

Aponte's claims about the City's failure to train and supervise police officers fare no better.  Aponte does not allege any facts that would support an inference that the City was on notice of a risk of police officers committing constitutional violations and deliberately ignored that risk.  *See Wood v. Williams*, 568 F. App'x 100, 105 (3d Cir. 2014).  In fact, he does not allege any facts about City police officer training or supervision at all.  *See Freedman v. City of Allentown*, 853 F.2d 1111, 1117 (3d Cir. 1988) ("Mere conclusory allegations . . . that the defendants deliberately elected not to train are not enough to support a constitutional claim."); *Cooper v. Chester*, 810 F. Supp. 618, 623 (E.D. Pa. 1992) (pleading insufficient where plaintiff alleged a city "as a matter of policy and practice, has, with deliberate indifference failed to adequately discipline, train or otherwise direct police officers concerning the rights of citizens, thereby causing the defendant officers in this case to engage in the unlawful conduct"); *McCall v. City of Phila.*, 396 F. Supp. 3d 549, 560 (E.D. Pa. 2019) (allegations devoid of specific factual support for assertions that City failed to train, supervise and discipline employees insufficient to plead deliberate indifference).

Count IV of the Complaint does not set forth any § 1983 claim upon which relief can be granted.

IV

Federal Rule of Civil Procedure 15(a)(2) instructs courts to "freely give leave [to amend a complaint] when justice so requires," which "certainly includes amendment to cure defective allegations. *Shifflett v. Korszniak*, 934 F.3d 356, 366 (3d Cir. 2019). Aponte may amend Count IV consistent with this Memorandum and to the extent he can allege facts sufficient to state plausible claims for relief.

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*

GERALD J. PAPPERT, J.